Case 17-6236, Eric Tuttobene et al. v. The Assurance Group Inc. Oral Argument, 15 minutes per side. Mr. Berger for Robert Ghirangelli, the appellants. Good morning to you all. I am Ken Berger from Murfreesboro, Tennessee, just outside Nashville, and I represent Mr. Ghirangelli, Holley, Nash, Petitti, and Pye in this appeal that requests reversal of the granting of summary judgment in favor of the defendant. This is a factually complicated case. I guess it's a bit complicated factually and legally. What I'd like to do, rather than talk much at all about the voluminous facts in this and the narrow legal issues are, and I'd like to reserve three minutes if I may. If I'm asked to put into a single short statement the narrow issues that I think we've addressed in each of our briefs, it would be this statement on behalf of the appellant from our point of view, what the applicable statute of limitations is in a claim and the substantive law considerations involving the facts of when a particular claim accrues, whatever the nature of that claim is, installment contract, copyright, or ERISA. Those are two separate questions when you're looking at the borrowing statute, when you're considering the terms of this contract. I'd like to begin by emphasizing, if I may, these legal points, and I'll be glad to respond to any questions. Whatever relevance, whatever eventual relevance that this court may assign to these purported claimed contract terms and these independent agent agreements, it's important to remember three or four points going forward here. There is no contract in this record for Plaintiff Behr. Nowhere anywhere in the record, so none of these contract arguments of the appellee should apply to Mr. Behr. Both parties apparently misplaced his contract. There's no question that he had a contract at some time, but he... I thought there was a concession in the record that he was one of the people who was covered by the contract, and the same contract that everybody else was covered by. In our statement and our response to their statement of admissions, statement of material facts, we acknowledge only that he signed a contract at some time. He doesn't dispute that. In fact, we assert it. We not only don't dispute it, we assert it for other parts of the case, but not the specific terms of this contract. Why would they have been any different when everybody else's contract is just the same? Well, respectfully, Your Honor, they're not. As I cover on those six items that I list on pages 29 and 30 of my brief, Mr. Pye's contract is not the same. But isn't that because you've just copied odd pages rather than even and odd, so it's simply a replication error? That's not clear in this record. It appears to me, because they filed it twice, that they presented that to Mr. Pye at that time. It was signed and executed at that time with these odd excerpts. It is, as I say in the brief, nonsensical in some of its terms. That North Carolina wording doesn't appear in there. That is what TAG used in their relationship with Mr. Pye. I do believe they did exactly what you described, but I think they did it at the outset rather than at the time they were filing these matters in the court. Mr. Pye's contract, as I say, has no reference to North Carolina law. It's a different version. The format is slightly different and the wording is slightly different. The point is, in this case where they have the burden in their summary judgment position, that is something that's simply not clear in this record. It is a disputed issue of fact from our point of view. All of these plaintiffs admit, as I said, in fact assert that they signed some type of contract at the outset. There are lots of questions about the terms, about the conditions. They argue with regard to, I believe it's Mr. Garangelli, they emphasize for statute of limitations purposes that he left in 2008 and he did indeed leave in 2008. The only contract they've offered for him is dated late November, mid-November 2008, without any explanation in the record. I think the answer to that, as they will point out, and I think it's probably correct, is that was maybe a later version of that. That is just not something that is clear and is shown in this record. As the district judge's memorandum emphasizes correctly, I think up to a point, in deciding which state's statute of limitations should apply to these agents' claims, North Carolina or Tennessee, ultimately it probably doesn't make much difference whether that North Carolina three-year statute of limitations for general contracts is applied on the provisions of the agent's alleged contracts, the contract terms, or whether it's due to, as Judge Sharp commented, the application of the Tennessee borrowing statute. The application of the three-year statute of limitations should still, we respectfully insist, permit these agents to recover for the three years preceding. More importantly, as these amounts continue to accrue going forward, they should be able to get an accounting and recover. Just so I understand, are you conceding that irrespective of the contracts under the borrowing statute, North Carolina law would apply, and the whole thing comes down to the accrual question? I think that's a fair concession. We really believe that the six-year Tennessee statute should apply, but that's not something that I think I have time to, and I haven't attempted to focus on that much. We're content with the three-year statute of limitations. In your briefing, you don't focus on the district court's borrowing analysis, correct? I don't, and it's not so much as a matter of, we certainly didn't overlook it. He discussed it. I just don't think that it's the central issue in the case. That's what he used to find that North Carolina law applies. He did that, and he commented that's sort of icing on the cake, along with the fact that they say that it's contained in the contract terms that North Carolina law will apply. Ultimately, we say that the, and as I understand the Apolese brief, Tagg argues that whether it's based on the claimed contract wording or whether it's based on this borrowing statute issue, that finding under the borrowing statute forecloses our ability to argue under Petrella and the Bay Area case that there is this sharply disputed, complicated fact issue that ultimately decides when and how accrual has occurred. These cases that deal with a separate accrual rule that would allow us to go forward. Whether the district court was obligated to accept North Carolina substantive law on this subject of when and how accrual occurred, obviously is ultimately the issue in the case. All of these agents earned their commissions in Tennessee or other states. Tagg is authorized to do business and doing business as an insurance entity. We have some dispute about how to label them, as you saw, but they're registered and authorized to doing business in Tennessee. Most of the payor insurance companies are in other states. We don't know for sure in this record exactly where that money is. There's been a lot of discussion about in Mr. Best's deposition and the other quotes that we had in the brief, a lot of discussion about how the money was handled. We don't know for sure that that money is in North Carolina. That's a part, again, of their summary judgment burden of proof. It could be in a bank in Virginia. It could be in a bank anywhere. That's not our burden in the summary judgment stage of this. It's their burden to show where that money is located. Don't know that that determinative. Their primary focus is Tagg's principal place of business is in North Carolina. In looking at this accrual dispute, this accrual rule, the fact that the North Carolina courts have said, that sort of skirted over from my respect. Of course, the North Carolina agents, there's no question it accrued in North Carolina. They were all there. That was never a dispute. The question as to these plaintiffs, as to these individuals, is should the substantive law aspects of Petrella and Bay Area? Why would they apply under ERIE? I'm sorry? Under ERIE, why would we ever apply? Those are interpreting federal statutes. We're trying to figure out North Carolina law. Respectfully, Your Honor, I think my argument on that point is that they deal with federal statute. We have ERISA and we have copyright law. They talk in terms... We're trying to figure out what North Carolina's accrual law is, not what federal law is, right? I think that the federal substantive law where they describe the typical installment creditor, they don't limit, the Supreme Court doesn't limit its analysis. What about ERIE? I think ERIE requires, in a diversity case, typically, that the law of the forum applies as to issues of procedure and the statute of limitations. Substantive law applies... Of what? Where the claim accrued. Ultimately, it's a fact issue. North Carolina. I don't think that issue may be skirted past. I don't think it accrued in North Carolina. Let me ask you this. Those federal cases, at least one of them, involved set installments that were not met. That isn't this case. These aren't installments in a certain amount due at a certain time. I think the verbiage that I quoted on page 21 of the brief, in both of these cases, where they say, if you are invited to know the unknowable, your statute of limitations doesn't run until you know that, under federal substantive law. Let me ask you an additional question. I don't mean to run over Judge Tappar, but there was a separate plaintiff who was sued in North Carolina by TAG, and the North Carolina Court of Appeals also nixed the application of the rule you're arguing should be applied here. What clearer determination of state law do we have than that? How can you say, if you are invited to know the unknowable, how can you argue that that's not decisive? It goes back to my opening comment, Your Honor. I think the borrowing statute says, if we accept the borrowing statute, and that's what the judges ruled in Nashville, that compels application of the three-year statute of limitations. That does not compel the application of substantive law considerations about how accrual has occurred and, factually, whether accrual has occurred. You're not listening to her question. I'm sorry. Her question is, the Bear case in North Carolina specifically told us how accrual works in North Carolina in this exact instance. That is the substantive law. The difference in that is that that accrual rule was not really discussed in a factually disputed context, because all of those people were in North Carolina. All of them performed their work in North Carolina, and all of the breaches occurred in North Carolina. They were North Carolina residents. I think you're mixing apples and oranges. Once we know that we're applying North Carolina law, we look at the accrual rules of North Carolina, the substantive law to understand their statute of limitations, and Bear tells us what that substantive law is, and you haven't dealt with that case. The reason I haven't dealt with it is that I respectfully disagree. It seems to me that when Petrella and Bay Area say, factually, substantively, accrual in the United States of America on claims of this type occurs when the default occurs, when the claim is knowable, when it can be identified. Then you'd have inconsistencies in diversity suits and state forum suits, if that was the case, in applying state law, because that's what Erie was all about at its core. One more question. Doesn't Christian Burry I Center 2017 North Carolina case resolve your argument, because it talks in terms of installments must be a separate, both in the agreement to perform and in the promise of compensation, in order to be installments. You have to have those separate promises, and then determines that if everything flows from the initial promise, which would be the initial sale, then it's not an installment contract. Why doesn't Christian Burry solve the problem? Because I believe that is inconsistent with the substantive findings in Petrella and Bay Area. But that's a North Carolina Supreme Court case, so why doesn't that tell us exactly how North Carolina determines what's installment and what's not? I don't think Tennessee has to follow North Carolina law on those substantive law considerations. Even if the borrowing statute says we're stuck with a three-year statute of limitations, it doesn't say Tennessee must follow or deal with North Carolina's substantive law in any particular way. It says we're stuck with the three-year statute of limitations, and we accept that. Okay. Thank you. Thank you. Your time is up. May it please the Court, I'm John Hicks on behalf of the Appley. With me is Mr. Chris Finan. Mr. Finan's here with me today because he actually argued the Bear case in North Carolina. Well, before we get there, has your client calculated what's owed to these individual agents? Has that ever been completed? Your Honor, there were some accountings done, and the materials from which those amounts could be calculated were provided. Were provided to whom? First of all, Your Honor, the information on each agent's commissions and sales and expenses were available to that agent on the web portal that TAG maintained, and it's uncontradicted in the record that they had access to that information the entire time that they were associated with TAG. Well, but once they leave, have they had available to them the money that has accrued from their sale of insurance products since the date that they left employment? If Your Honor's question is, have they been provided a separate accounting of those amounts? We can start there. I don't know that an individual report for each one of these plaintiffs has been prepared and provided. Has the information from which they can draw those conclusions been made available? Yes, Your Honor. So, your position is that all of these plaintiffs have available to them today what has accrued in earnings on the products they sold to date? I'm not taking that position, Your Honor. I'm not saying that they have access. It's very unclear on that. It seems that the record indicates at some point that the calculations have not been made. Some individual accountings were made. This was the source of some of the discovery disputes that occurred at the trial court level. There are some significant disputed facts about whether that information was appropriate, whether it was complete, and whether it was made available to them. It is our position that the information from which they could draw those conclusions was made available to them in discovery. So, it's your position that even though you may be holding money on their behalf, the statute of limitations has run on their ability to force you to pay it to them? We don't believe that we're holding any money that has accrued to them. That gets to the vesting issue that Judge Sharp addressed in his memorandum opinion. Did you have to work so many years? Correct, Your Honor, to be able to be entitled to receive ongoing residual payments in the future. Judge Sharp addressed the vesting issue with respect to one of the plaintiffs. That's no longer before Your Honor. But I would submit that that vesting issue applies to each and every one of the contracts that are in play here. So, your position is no money is owed? That's correct, Your Honor. Okay. Proceed. If it pleases the Court, Petrella and Bay Area are federal cases. Petrella and Bay Area don't change ERIE. The North Carolina statute of limitations applies. In the very case, the very contracts that are involved in this case were involved in Bay Area. In fact, the parties to Bay Area were originally parties in this case, and they were dismissed for lack of subject matter jurisdiction for failure of diversity. So, they were involved in this case. They were dismissed. The cases proceeded in North Carolina. The North Carolina Court of Appeals addressed the very issue that's being argued by the appellants here. I want to address one other thing briefly. That's persuasive but not binding, right? Because it's not the highest court of North Carolina. It is persuasive, Your Honor. I agree that it's not binding. I think one of the quotes that was used in one of the cases was ERIE instructive. So, I think that it is ERIE instructive here as to what the Court of Appeals said in North Carolina. I think it's important that an application for review by the Supreme Court was made in the case and was not accepted, and then a petition for certiorari to the U.S. Supreme Court was made. What about BAB, which is a North Carolina case that allowed continuing violations to be brought? Your Honor, I can't tell you that I'm familiar with BAB, but— What do we do if there's—let me ask a different question because that's a little unfair then. What do we do if there's conflicting intermediate appellate court cases? And this one's closer to on point, obviously, BEHR, but there's arguably conflicting. What do we do in that instance? I'm just curious. I suppose—Your Honor, I don't know if there's a—I think there's a procedure to certify a question, perhaps. I know a district court can do that to the highest court in North Carolina, but— So, one answer is to certify it. Is another just to predict or would you rely on BEHR because the factual premise is the same? I mean, what would your argument be? I would argue that BEHR is instructive because it is the very same fact pattern, the very same contract that's involved here, and the issue was presented to the intermediate appellate court in North Carolina and resolved in favor of tagging in that case. As to the question that was raised— Let me ask you one follow-up question. Do you or we know of any opinion out of the Supreme Court of North Carolina that conflicts with the BEHR ruling? We do not, Your Honor. Okay. We do not. I would like to address briefly the question of what contract applied. In the case we submitted and the district court found that we submitted a properly supported motion for summary judgment that left undisputed the issue about what the terms of the contracts were and which contracts applied. And the plaintiffs admitted that in their statement, responses to our statement of undisputed facts, and Judge Sharp noted that in his memorandum. He's conceded here that North Carolina law applies. Excuse me, Your Honor? He's conceded here that North Carolina applies. He said if he had more time, he'd like to argue Tennessee. But all things being equal, he's arguing North Carolina law applies and the continuing wrong doctrine allows him to bring suit, and that's where the district court is. I think we've addressed the continuing wrong issue with the intermediate North Carolina appellate decision and with the concession that North Carolina law applies. Unless the court has more questions for me, I'll conclude. Thank you. Thank you. Very briefly, respectfully, there's never been an accounting for any of these plaintiffs except for Mr. Tutabene, an accounting that had been respectfully, when Judge Sharp ordered the accounting for Mr. Tutabene, for reasons not explained, there had been an accounting ordered and completed and filed in the record, for whatever relevance that may have. The bottom line to where we... He was paid and his case was resolved. He resolved it by agreement under confidential terms, yes, ma'am. These appellees don't dispute the quotes in my brief on this issue of the contracts vesting. There is no mutuality in these contracts. It says we will do what we want to, when we want to, if we want to. You can't make us do anything, but you have to do these things. These contracts are unsigned. They are conflicting. They are nonsensical in some places. If there's no contract because there was not a meeting of the minds or not mutuality, then how can you sue for breach? Well, we sued because there can be an oral understanding and an oral agreement. I know that sounds a bit ambiguous. One of the things we argued is we agreed in the statement of response to the statement of undisputed facts. Yes, there was a contract. We all signed contracts. They apparently got lost, misplaced, casually handled by both sides. We just don't know what the terms are. They can't identify for this court any place where I agreed that the terms applicable to the North Carolina defendants were the same terms applicable. The contracts were similar. We agreed to that. In fact, asserted it. We asserted it for the reasons you described. We just don't know what those contract terms were. All we know is they have our money. They continue to get our money going forward based on commissions earned outside the state of North Carolina in Tennessee. What about the vesting provision? The vesting ultimately gets paid. You have to work so long in order to continue to be paid. If these contracts are valid, if they're not void due to absence of mutuality and lack of specificity, vagueness, then I'd have a problem with the vesting problem for these appellants. But I think these contracts, as far as the application of those terms, ultimately it's an issue of fact that requires a trial in the entire context of this complicated picture with these agents and TAG. On pages 29 and 30, respectfully, if I didn't emphasize anything before I sat down here, pages 29 and 30 of my brief, I listed six unexplained problems that they really don't address with these so-called contract terms. The contracts were executed. We just don't know which terms they were. These North Carolina people cannot be compared. They had different contracts. All of their work was done in North Carolina. They were dealing with activities in North Carolina. The accrual activities, if I may describe them that way, for these plaintiffs did not occur in North Carolina. Anything further? No, thank you. Thank you. The case will be taken under advisement.